CITY OF CINCINNATI, APPELLEE, *v.* ALEXANDER, APPELLANT.

(No. 77-1044—Decided May 17, 1978.)

*Mr. Thomas A. Luebbers,* city solicitor, *Mr. Paul J. Gorman* and *Mr. John M. DiPuccio,* for appellee.

· *Messrs. Boyd & McKew* and *Mr. David J. Boyd,* for appellant.

250

STEPHENSON, J. The issue presented, for the first time in this court, is whether R. C. 2935.03 confers upon a municipal police officer authority to arrest without a warrant outside the geographical limits of his municipality for misdemeanor offenses observed by the officer to have been committed outside such municipal limits.

R. C. 2935.03, at the time relevant herein, read as follows:

"A sheriff, deputy sheriff, marshal, deputy marshal, or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained.

"When there is reasonable ground to believe that an offense of violence, or a theft offense as defined in section 2913.01 of the Revised Code, has been committed, a sheriff, deputy sheriff, marshal, deputy marshal, or police officer may arrest without a warrant any person whom he has reasonable cause to believe is guilty of the violation, and detain him until a warrant can be obtained.

"A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained."

This court concluded in *Fairborn* v. *Munkus* (1971), 28 Ohio St. 2d 207, that a municipal police officer is an "officer," as that term is used in R. C. Chapter 2935. Thus a municipal police officer is a "police officer" within the meaning of that term in R. C. 2935.03. Although so included, we hold that R. C. 2935.02 does not confer arrest authority upon a municipal police officer under the facts of this case for the reasons hereinafter set forth.[1]

_____

[1] Because of its unique facts, the affirmance by this court in *State* v. *Anderson* (1976), 46 Ohio St. 2d 219, of a conviction following a warrantless arrest made by a municipal police officer outside his municipality is neither controlling nor dispositive, the opinion expressly stating that the identical question the instant appeal presents would "remain open."

An examination of the legislative history of R. C. 2935.03 and related statutes negates the claim that the General Assembly intended to devolve statewide arrest powers upon the officers named in the first paragraph of the statute by the omission of a territorial restriction to the respective political subdivisions relating to the enumerated officers.

What is substantially now the first paragraph of R. C. 2935.03 first appeared in the 1869 enactment by the General Assembly of a "Code of Criminal Procedure." Section 21 of that Act, at 66 Ohio Laws 287, 291, provided the following:

"Every sheriff, deputy sheriff, constable, marshal or deputy marshal, watchman or police officer, shall arrest and detain any persons found violating any law of this state, or any legal ordinance of any city or incorporated village, until a legal warrant can be obtained."[a]

In force at the time of adoption of Section 21 was a statute enacted on March 27, 1837, by the General Assembly as a part of an Act "Defining the powers and duties of Justices of the Peace and Constables in Criminal Cases." 35 Ohio Laws 87. That Act, at Section 25, read as follows:

"Sec. 25. Constables shall be ministerial officers of the courts holden by justices of the peace, in criminal cases, within their respective counties;

"*Second,* And it shall be their duty to apprehend and bring to justice, felons and disturbers of the peace, and to suppress riots, and keep and preserve the peace, *within their respective counties;*

"*Third,* They shall have power, and they are hereby

---

[a] This basic wording of this paragraph has been retained although the statute was amended in 1929, 113 Ohio Laws 140, to designate the enumerated officers as "peace officers"; amended in 1933, 115 Ohio Laws 530, by deleting "constable" and enacting what is now the third paragraph of R. C. 2935.03 limiting the arrest authority of the constable to his township; amended in 1967, 132 Ohio Laws 959, 960, to permit an arrest by certain officers when there was a reasonable ground to believe certain enumerated offenses had been committed; and amended in 1972, 134 Ohio Laws 1990, and again in 1976 in Am. Sub. H. B. No. 300, to specify as reasonable grounds the commision of a theft offense or a felony drug abuse offense.

authorized to execute all writs and process in criminal cases, throughout the county in which they may reside, and where they were elected or appointed;

"*Fourth*, And if any person *charged* with the commission of any crime or offence, shall flee from justice, it shall be lawful for any constable of the county wherein such crime or offence was committed, and he is hereby authorized and required, to pursue after and arrest such fugitive from justice, in any other county of this State, and such fugitive to convey before any justice of the peace of the county where such crime or offence was committed." (Emphasis added.)

Significantly, in the enactment of the Code of Criminal Procedure, *supra*, wherein the predecessor of R. C. 2935.03 appears, a large number of prior Acts of the General Assembly were repealed. Included was the following:

"The whole of the act defining the powers and duties of justices of the peace and constables in criminal cases, passed March 27, 1837, except sections 24, *25*, 26, 27, 28, 29 and 33." (Emphasis added.) 66 Ohio Laws 287, 323.

It would be wholly inconsistent to conclude that state-wide warrantless arrest authority was intended to be conferred by Section 21, *supra*, when, in the same Act, the prior restriction of general police authority of constables to their respective counties, unless a warrant was obtained, was expressly continued in force.[3] Unless it was intended to treat constables differently from the other enumerated officers, and we perceive no legislative intention of such differentiation, it is manifest by the above that the General Assembly intended no devolution of arrest power outside the respective political subdivisions relating to the enumerated officers in the enactment of Section 21, the predecessor of R. C. 2935.03.

----

[3]The opinion in *State* v. *Wallace* (1976), 50 Ohio App. 2d 78, therefore properly rejected the "possible interpretation" of R. C. 2935.03 that the 1933 amendment in 115 Ohio Laws 530 restricting arrest authority of constables to their townships manifested a legislative intention that municipal police officers were not to be limited to their municipalities.

An examination of the early arrest authority conferred upon marshals, and the view of this court with respect to such authority, also tends to support the conclusion that no statewide arrest authority was intended in the enactment of Section 21, *supra*.

The General Assembly enacted, effective July 1, 1869, a comprehensive Act providing for the government of municipal corporations in 66 Ohio Laws 149, Section 142,[4] codified as R. S. 1849, which provided general arrest authority for marshals, including authority to pursue and arrest any person fleeing from justice in any part of the state. In *State v. Lewis* (1893), 50 Ohio St. 179, this court concluded that R. S. 1849 (Section 142, *supra*) was in *pari materia* with R. S. 7129 (Section 21 of 66 Ohio Laws 287, 291, *supra*). With respect to the statewide authority granted to marshals in R. S. 1849, the court in *Lewis* stated the following, at page 186:

"This section imposes on the marshal of a municipality important public duties, and clothes him with extensive powers in respect to their discharge. He is, by the terms of this section, among other duties which it enjoins, required to 'pursue and arrest any person fleeing from justice in any part of the state;' but whether with or without warrant the section is, in terms, silent. *He is thus clothed with authority throughout the whole state, which, but for the statute under consideraion, would be limited to his municipality.*" (Emphasis added.)

---

[4]Now incorporated in R. C. 737.19, Section 142 read in full as follows:

"He shall suppress all riots, disturbances and breaches of the peace, and to that end may call upon the citizens to aid him; he shall arrest all disorderly persons in the corporation, and pursue and arrest any person fleeing from justice in any part of the state; he shall arrest any person in the act of committing any offense against the laws of the state or the ordinances of the corporation, and forthwith bring such person before the mayor, or other competent authority, for examination or trial; and he shall receive and execute any proper authority for the arrest and detention of criminals fleeing or escaping from other places or states." 166 Ohio Laws 149, 173.

Thus, this court as then constituted did not view the predecessor of R. C. 2935.03 as including a grant of statewide arrest authority.

We deem it significant that the silence of the General Assembly in Section 21, *supra*, as to whether the arrest authority granted was intended to be statewide in scope, has continued for over 100 years, although the statute has been repeatedly amended as previously noted. This silence in Section 21 stands in marked contrast to Section 27, the predecessor of R. C. 2935.02, where in the same Act statewide arrest authority was expressly granted by the following:

"Sec. 27. If any person charged as aforesaid with the commission of an offense shall flee from justice, it shall be lawful for the officer in whose hands the warrant for such person has been placed, to pursue and arrest such person in any other county of this state, and him to convey before the magistrate issuing the warrant, or any other magistrate having cognizance of the case, of the county where such offense was committed." 66 Ohio Laws 287, 291.

To hold as did the Court of Appeals below, we would necessarily have to conclude that the General Assembly intended to leave to implication an important adjunct of the general authority to arrest for misdemeanor offenses. The express conferral of statewide arrest power when armed with a warrant and the silence of the statute when no warrant exists are persuasive that no such arrest authority was intended to be granted, and we so hold. We are bolstered in that conclusion by the familiar and accepted rule of statutory construction, judicially recognized and statutorily mandated, that statutes in derogation of personal liberty are to be strictly construed. R. C. 1.11; *William T. Spice & Son* v. *Steinruck* (1863), 14 Ohio St. 213.

By reason of our holding above, a question remains as to the proper disposition of this appeal. The posture adopted by the parties in the Court of Appeals, and continued in this court, is that the sole issue for determination is identical to that presented in *State* v. *Wallace, supra* (50 Ohio App. 2d 78). Thus, the Court of Appeals stated in

its opinion, "[w]e feel that in view of the posture in which this appeal comes to us.* *.* that we must proceed directly to determine, as the Franklin County Court of Appeals did in *Wallace*, the perimeters of a municipal police officer's authority to arrest." By confinement to that one issue, no claim is asserted, briefed or argued by the appellee that the judgment should be affirmed *irrespective* of the validity of the arrest.[5]

In light of the above, we deem it necessary to assume as implied in this appeal what was made express in *Wallace*, *i. e.*, a concession by the state that if the arrest were invalid, suppression of the evidence was required. Based solely upon this implied concession, it follows that the motion of appellant to suppress evidence should have been sustained.[6]

---

[5]The motion of appellant filed in the trial court seeking dismissal of the charges because of the invalid arrest was without merit and properly overruled by reason of *State* v. *Holbert* (1974), 38 Ohio St. 2d 113, wherein it was held that although a township police officer lacked authority to arrest, a traffic prosecution was properly commenced by the filing of an affidavit charging a traffic offense. See, also, *State* v. *Hooper* (1966), 10 Ohio App. 2d 229; *State* v. *Zdovc* (1958), 106 Ohio App. 481.

[6]We do not, therefore, reach or decide the question of (1) whether the federal exclusionary rule imposed upon the states by *Mapp* v. *Ohio* (1961), 367 U. S. 643, requires suppression of evidence derived from an arrest, defective under state law, but constitutionally valid insofar as made with probable cause, and of (2) whether, if suppression is not required under the federal exclusionary rule, it is required by Section 14. Article I of the Ohio Constitution which proscribes unreasonable searches and seizures.

See *State* v. *Eubanks* (1973), 283 N. C. 556, 196 S. E. 2d 706, and *People* v. *Burdo* (1974), 56 Mich. App. 48, 223 N. W. 2d 358, wherein it was held that an arrest illegal under state law, if made on probable cause, was constitutionally valid and that the federal constitutional rule of exclusion imposed by *Mapp* did not require suppression of the evidence derived from the arrest, and, that absent a rule, statute or state policy to the contrary, mere illegality did not require suppression on state grounds. But, see *State* v. *Cohen* (1976), 139 N. J. Super. 561, 354 A. 2d 677; *In re Thierry S.* (1977), 19 Cal. 3d 727, 566 P. 2d 610; and *Buse* v. *Texas* (Tex. Crim. App. 1968), 435 S. W. 2d 530, where, because of the illegal arrest, evidence was suppressed. Cf. *State, ex rel.*

Accordingly, the judgment of the Court of Appeals is reversed, and the cause remanded to the trial court for further proceedings.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, P. BROWN and SWEENEY, JJ., concur.
CELEBREZZE and LOCHER, JJ., concur in the judgment.

STEPHENSON, J., of the Fourth Appellate District, sitting for W. BROWN, J.

---

*Wilson,* v. *Nash* (1974), 41 Ohio App. 2d 201, wherein it was concluded that a warrantless misdemeanor arrest, illegal under R. C. 2935.03 because the officer did not see the offense committed, renders a breath-analysis test result "illegal" and the test result inadmissible at trial.

With respect to Section 14, Article I of the Ohio Constitution, this court, at a time when the federal exclusionary rule set forth in *Weeks* v. *United States* (1914), 232 U. S. 383, was not applicable to the states, held in *State* v. *Lindway* (1936), 131 Ohio St. 166, that evidence in a criminal case, even if obtained by unlawful search, was admissible if relevant and competent. While this court, since *Mapp,* has frequently applied the federal exclusionary rule, the non-exclusionary rule adopted in *Lindway* under the Ohio Constitution has never been overruled.