**The STATE of Ohio, Appellee,**

v.

**THIERBACH, Appellant.**

[Cite as *State v. Thierbach* (1993), 92 Ohio App.3d 365.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920672 and C–920673.

Decided Sept. 8, 1993.

*Fay D. Dupuis,* City Solicitor, *Terrence R. Cosgrove* and *Jennifer Bishop,* for appellee.

*Firooz T. Namei,* for appellant.

GORMAN, Judge.

The defendant-appellant, James Thierbach, appeals his conviction in the Hamilton County Municipal Court for operating a vehicle under the influence of alcohol.[1] He contends that: (1) the court did not have subject-matter jurisdiction because of his warrantless extraterritorial arrest in Kentucky; and (2) evidence gathered during that arrest should have been suppressed. The assignments of error are not well taken.[2]

On September 11, 1991, Thierbach spent the evening with friends in a bar. Just after midnight, a Cincinnati police officer saw him driving erratically in Ohio on Interstate 71. After several unsuccessful attempts to pull Thierbach's automobile over, the officer continued across the Interstate 471 bridge into Kentucky, where she finally stopped him and administered psychomotor tests. When Thierbach did not perform the tests satisfactorily, the officer arrested him for operating a vehicle under the influence of alcohol in violation of R.C. 4511.-19(A)(1), a first-degree misdemeanor, and cited him to appear in Ohio in the Hamilton County Municipal Court. The trial court overruled Thierbach's motion to suppress the evidence obtained in Kentucky. In a subsequent bench trial, the court found Thierbach guilty and imposed a sentence of ten days' imprisonment, a $200 fine, and a ninety-day driver's license suspension.

## I. THE FOURTH AMENDMENT EXCLUSIONARY REMEDY

In his second assignment of error, Thierbach argues that the Ohio police officer violated "Ohio law, the Constitution of the United States, and the laws of Kentucky," and, therefore, that the evidence obtained during his arrest should have been suppressed.

### A. *Fourth Amendment Violation*

Thierbach's federal constitutional argument is a misconception of the scope of the Fourth Amendment and the exclusionary remedy. Evidence gathered by state officers during arrests that violate the warrant or probable-cause requirements of the Fourth Amendment cannot be used against an accused at trial to prove guilt and must be suppressed under the exclusionary rule. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (exclusion); *United States v. Havens* (1980), 446 U.S. 620, 627–628, 100 S.Ct. 1912, 1916–1917, 64 L.Ed.2d 559, 566–567 (guilt). An illegal arrest, however, does not taint an

---

1. Because Thierbach was acquitted of the charge in the C–920673 appeal (R.C. 2921.331), that appeal is dismissed.

2. We have *sua sponte* removed this cause from the accelerated calendar.

otherwise valid conviction. *United States v. Crews* (1980), 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547. Even when a suspect is arrested illegally, evidence obtained without violations of the warrant or probable-cause requirements of the Fourth Amendment will not be suppressed. *New York v. Harris* (1990), 495 U.S. 14, 17–19, 110 S.Ct. 1640, 1642–1644, 109 L.Ed.2d 13, 19–21; *Crews, supra,* 445 U.S. at 470–473, 100 S.Ct. 1249–1251, 63 L.Ed.2d at 545–547.

The validity of extraterritorial arrests is specifically controlled by the *Ker–Frisbie* doctrine, not the Fourth Amendment. *Ker v. Illinois* (1886), 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; *Frisbie v. Collins* (1952), 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; 1 LaFave, A Treatise on the Fourth Amendment (2 Ed.1987), Section 1.9–1.9(a), 220–226 (*Ker–Frisbie* rule and personal jurisdiction); The Supreme Court, 1991 Term: Leading Cases (1993), 106 Harv.L.Rev. 163, 318–321, (*Ker–Frisbie* doctrine affirmed in *United States v. Alvarez–Machain* [1992], 504 U.S. ——, ——–——, 112 S.Ct. 2188, 2192–2193, 119 L.Ed.2d 441, 449–452). In both *Ker* and *Frisbie,* criminal defendants escaped from the state where they had allegedly committed crimes. Subsequently, law enforcement officers abducted them and forcibly returned them to the jurisdictions in which the offenses occurred. *Ker, supra,* 119 U.S. at 442, 7 S.Ct. at 228, 30 L.Ed. at 424; *Frisbie, supra,* 342 U.S. at 520, 72 S.Ct. at 510, 96 L.Ed. at 544. The United States Supreme Court held only that the out-of-state arrests did not violate the defendants' due-process rights. *Ker, supra,* 119 U.S. at 440, 7 S.Ct. at 227, 30 L.Ed. at 423; *Frisbie, supra,* 342 U.S. at 522, 72 S.Ct. at 511, 96 L.Ed. at 545. Because neither defendant claimed the officers lacked probable cause to arrest, in violation of the Fourth Amendment, the exclusionary rule was not an issue. See, generally, *Crews, supra,* 445 U.S. at 473–474, 100 S.Ct. at 1251, 63 L.Ed.2d at 546–547 (citing *Ker* and *Frisbie* ).[3]

■ As in *Ker* and *Frisbie,* Thierbach has never claimed that the Cincinnati officer lacked probable cause to make a warrantless arrest. Therefore, he cannot validly argue that his extraterritorial arrest violated the Fourth Amendment. Likewise, the evidence in connection with his arrest in Kentucky was not obtained in violation of a federal constitutional right.

---

3. But, cf., *Graham v. Connor* (1989), 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443, which held that "excessive force" during an arrest triggered Fourth Amendment objective-reasonableness analysis for the purposes of bringing a Section 1983, Title 42, U.S.Code action. Similarly, at least one court has held that when a defendant is violently, brutally kidnapped and tortured in an arrest out of the United States, a federal district court may be divested of its jurisdiction over the accused. *United States v. Toscanino* (C.A.2, 1974), 500 F.2d 267, 275–276. The United States Supreme Court· seemed to reject that specific notion when it reaffirmed, without qualification, *Ker* and *Frisbie* in *Alvarez–Machain, supra,* 504 U.S. at ——, 112 S.Ct. at 2188, 119 L.Ed.2d at 441.

Because Thierbach has not alleged excessive force here, the implications of *Graham* do not apply.

### B. *Ohio Constitutional Violation*

Because the Fourth Amendment provides only a floor for constitutional protections, states are free to develop search-and-seizure standards under their own constitutions which guarantee greater protections than the United States Constitution. *California v. Greenwood* (1988), 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30, 38; *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201; *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163. The Ohio Supreme Court originally used an interstitial approach when construing individual rights pursuant to search-and-seizure violations under Section 14, Article I of the Ohio Constitution. See, generally, Utter & Pitler, Presenting a State Constitutional Argument: Comment on Theory and Practice (1987), 20 Ind.L.Rev. 635.[4] Under the interstitial approach, a state court examines its own constitution for protections not first found in its Fourth Amendment analysis. *Id.;* see, *e.g., State v. Lindway* (1936), 131 Ohio St. 166, 2 N.E.2d 490 (finding fewer protections).

Following *Mapp v. Ohio,* however, the Ohio Supreme Court turned to a "lockstep" approach, concluding that Section 14, Article I of the Ohio Constitution protects "the same interests and in a manner consistent with the Fourth Amendment." *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271, fn. 1; see, *e.g., State v. Halczyszak* (1986), 25 Ohio St.3d 301, 302, 25 OBR 360, 361, 496 N.E.2d 925, 929. Recently, however, after testing primacy analysis, the court apparently revived its appetite for the interstitial approach. See, generally, *State v. Penn* (1991), 61 Ohio St.3d 720, 576 N.E.2d 790 (primacy); *State v. Brown* (1992), 63 Ohio St.3d 349, 352, 588 N.E.2d 113, 115 (interstitial); *State v. Storch* (1993), 66 Ohio St.3d 280, 612 N.E.2d 305 (interstitial). In *Brown,* the court noted hypothetically that, if the United States Constitution allowed detailed drug searches of automobiles after stops for unrelated traffic offenses, the Ohio Constitution will not. *Brown, supra,* 63 Ohio St.3d at 352, 588 N.E.2d at 115 (possible interpretation of *New York v. Belton* [1981], 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768).

In the case of extraterritorial arrests, the Ohio Supreme Court specifically has declined to grant greater protection to the accused under the Ohio Constitution than that granted under the federal Constitution. An illegal extra-

---

4. The authors identify four primary approaches that state supreme courts take when analyzing issues under their own constitutions. Utter & Pitler, *supra,* at 645–652. The lock-step approach denotes absolute harmony with the United States Supreme Court. *Id.* at 645–646. The primacy method examines state constitutional law before turning to federal law. *Id.* at 647–648. The interstitial approach involves looking at the United States Supreme Court cases and using state constitutional law only if the federal claim fails. *Id.* at 648–651. Finally, using the dual-sovereignty system of analysis, courts look at the state constitution first and comment separately on the federal claim. *Id.* at 651–652.

territorial abduction or arrest does not affect Ohio's right to try a defendant for a crime committed by that person in Ohio. *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598, syllabus (intrastate); *Tomkalski v. Maxwell* (1963), 175 Ohio St. 377, 378, 25 O.O.2d 278, 194 N.E.2d 845, 846 (interstate); see, also, *State v. Henderson* (1990), 51 Ohio St.3d 54, 55–56, 554 N.E.2d 104, 106 (citing *Ker* and *Frisbie* with approval). Therefore, Thierbach has no basis to support a claim that his Ohio constitutional rights were violated by the Kentucky arrest.[5]

## C. *Ohio Statutory Violation*

■ Thierbach also argues that the Cincinnati police officer exceeded her statutory power by making the extraterritorial arrest. He concedes that R.C. 2935.03(D) allows an Ohio police officer to pursue and arrest a suspect in another political subdivision in Ohio, but he contends that this section does not apply to pursuits into an adjacent state.

Municipal police officers, within their jurisdiction, are empowered to make warrantless arrests for Ohio crimes. R.C. 2935.03(A). R.C. 2935.03(D) enlarges that arrest power through the authority of "fresh pursuit," stating in pertinent part:

"[A] municipal police officer * * * may, outside the limits of the political subdivision, * * * pursue, arrest, and detain [a] person until a warrant can be obtained if all of the following apply:

"(1) The pursuit takes place without unreasonable delay after the offense is committed.

"(2) The pursuit is initiated within the limits of the political subdivision * * *.

"(3) The offense involved is a felony, a misdemeanor of the first degree or a * * * misdemeanor of the second degree * * *."[6]

---

5. In *Lindway*, which has never been overruled, the court held that the Ohio Constitution does not require an exclusionary remedy for violations of Section 14, Article I. *Lindway, supra,* at pa ·agraphs two and three of the syllabus. If *Lindway* is still precedent, even for violations of the Ohio Constitution, appellant cannot receive the benefit of exclusion. See, generally, *Cincinnati v. Alexander* (1978), 54 Ohio St.2d 248, 254, 8 O.O.3d 224, 227, 375 N.E.2d 1241, 1245, fn. 6. But, cf., *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129 (suppressing evidence under Section 14, Article I).

6. A statutory extraterritorial fresh-pursuit arrest is not to be confused with the constitutional doctrine of "hot pursuit." The general rule is that both probable cause and a warrant are required for arrests inside a suspect's home. *Payton v. New York* (1980), 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650. When, however, an officer has probable cause to believe a person has committed a crime in a public place and is in hot pursuit of that suspect, the officer may enter a private dwelling to arrest that person without a warrant. *United States*

In R.C. 2935.03(D), the General Assembly did not by express terms limit extraterritorial arrests to political subdivisions in Ohio or authorize them in neighboring states. If silence suggests an ambiguity, the court must then look to the legislative intent. R.C. 1.49; *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190–191, 16 O.O.3d 212, 213–215, 404 N.E.2d 159, 162. There does exist legislative history which demonstrates that the General Assembly sought to create a legislative "fresh-pursuit" exception to the general common-law rule that previously limited arrests to the officer's jurisdiction. It was a reflex to the Ohio Supreme Court's decision in *Cincinnati v. Alexander* (1978), 54 Ohio St.2d 248, 8 O.O.3d 224, 375 N.E.2d 1241. Ohio Legislative Service Commission, Summary of Enactments (Aug. 1979–Dec. 1980), Am.Sub. S.B. 355 at 120. Additionally, in the context of R.C. 2935.30, which provides for fresh pursuit by foreign police officers in Ohio, the object of R.C. 2935.03 is to outline the extent of police officers' power to arrest persons suspected of committing Ohio crimes, not to grant constitutional protections to fleeing suspects. See, generally, R.C. 2901.04(B). Under the circumstances, we will not create by judicial fiat a restriction in R.C. 2935.03(D) against interstate arrests when the General Assembly did not specifically provide one.

▮ Even had the arresting officer violated R.C. 2935.03(D), the exclusionary rule does not apply to an illegal arrest stemming from a statutory rather than a constitutional violation. The exclusionary rule, by way of illustration, is not triggered when arresting officers violate statutes that prohibit: (1) kidnapping across state lines, (2) confining a defendant out of the county in which the arrest took place, or (3) making an arrest for a minor misdemeanor committed out of the officer's presence. *Frisbie, supra,* 342 U.S. at 522–523, 72 S.Ct. at 512, 96 L.Ed. at 545–546; *State v. Thompson* (1987), 33 Ohio St.3d 1, 8, 514 N.E.2d 407, 415 (R.C. 2967.15); *State v. Allen* (1981), 2 Ohio App.3d 441, 441–443, 2 OBR 536, 536–538, 442 N.E.2d 784, 785–786 (R.C. 2935.03); see, also, *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 264, 22 OBR 427, 437, 490 N.E.2d 1236, 1246 (no exclusion for evidence gathered in violation of Crim.R. 41).[7] For statutory,

---

*v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300. Evidence gathered during or subsequent to the hot-pursuit arrest will not be excluded at trial. *Id.*

In addition, statutory fresh pursuit under R.C. 2935.03(D) does not necessitate a "fender-smashing Hollywood style chase." *State v. Winters* (1990), Hamilton App. No. C–880773, unreported, 1990 WL 10977. When there is no hiatus in the pursuit, the requirement of R.C. 2935.03(D)(1) is satisfied. *Id.*

7. The legislature is free to create strict-liability statutes, to which the exclusionary remedy may attach. For example, in R.C. 4511.19(A)(3), the legislature established a *"per se offense"* of driving under the influence of alcohol. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34. When a driver's blood/alcohol content is at a prescribed level, he or she is guilty of the offense. *Id.* The trier of fact does not have to actually determine that the person

nonconstitutional violations, the remedies include extradition and criminal prosecution of the officers, instead of exclusion of the evidence in the accused's trial. *Ker, supra,* 119 U.S. at 444, 7 S.Ct. at 229–230, 30 L.Ed. at 424; *Frisbie, supra,* 342 U.S. at 522–523, 72 S.Ct. at 512, 96 L.Ed. at 545–546; *Alvarez–Machain, supra,* at fn. 16.

### D. *Kentucky Statutory Violation*

Thierbach also contends that the evidence should be excluded because the officer violated Ky.Rev.Stat. 431.005(4) by making an illegal "citizen's arrest" in Kentucky. Here, just as in *Ker,* the constitutional exclusionary rule does not apply when an officer allegedly violates a foreign statute. *Ker, supra,* 119 U.S. at 444, 7 S.Ct. at 229–230, 30 L.Ed. at 424.

Finding Thierbach's arguments without merit, we overrule the second assignment of error.

## II. SUBJECT–MATTER JURISDICTION

In his first assignment of error, Thierbach argues that the evidence should have been suppressed because the trial court lacked subject-matter jurisdiction. Because the crime was a misdemeanor of the first degree, which was committed in this state, the trial court had subject-matter jurisdiction. R.C. 1901.20, 2901.11(A)(1) and 4511.19(A)(1). The first assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., and DOAN, J., concur.

---

operated a vehicle under the influence of alcohol, only that the suspect's chemical test was a certain level. *Id.* Because of this strict liability, when an officer does not substantially comply with the testing procedure defined by the statute, evidence of the alcohol content is suppressed. *Id.*