OPINION
This appeal emanates from the Trumbull County Central District Court. Appellant, Richard L. Jennings, Jr., appeals the judgment entry finding him guilty of driving under the influence, driving under suspension, and traveling outside the lanes of travel.
On February 11, 1998, appellant was issued a traffic citation for driving under the influence of alcohol, in violation of R.C.4511.19(A)(1); driving under suspension, in violation of R.C.4507.02(B)(1); and for traveling outside the lanes of travel, in violation of R.C. 4511.25. At the initial appearance, appellant entered a plea of not guilty to the charges and waived his rights to a speedy trial. Bail was set at $1,500. Appellant filed a motion to suppress all of the evidence acquired on February 25, 1998, and also requested that the charges against him be dismissed. On June 17, 1998, a suppression hearing was held, which resulted in appellant's motion being overruled.[1]
At the suppression hearing, Officer Kreig Vens ("Officer Vens"), a twenty-one year veteran and Cortland City police officer, testified for appellee, the state of Ohio. He related that on February 11, 1998, at about 2:21 a.m., while he was on duty, he witnessed appellant, who was in a pickup truck, "pull out of the Tracks Inn [a bar], as [Officer Vens] was crossing the railroad tracks. [Appellant] kind of was left of center . . . and he cut the corner to go east on Bradley-Brownlee, and he drove up . . . the center of the road using both lanes of travel." Officer Vens proceeded to activate his emergency lights and when appellant pulled over, he was out of Cortland City limits. After Officer Vens stopped appellant's vehicle, he requested appellant's driver's license and registration. Appellant provided Officer Vens with his registration, but revealed that he did not have his operator's license. Officer Vens stated that the smell of alcohol emanated from appellant, so he asked appellant to exit the truck and perform field sobriety tests. He also noticed that appellant's "eyes were glassy, and his speech was a little slurred." Specifically, Officer Vens had appellant do three field sobriety tests, which included: (1) the heel-to-toe test, which he failed; (2) the finger-to-nose test, which he passed; and (3) a test appellant failed where he was to tilt his head back, close his eyes, and maintain that position for fifteen to twenty seconds.
Officer Vens placed appellant under arrest and took him to the Cortland City Police Department where a Breathalyzer test was administered. Appellant wanted to speak with his attorney prior to submitting to the test. After appellant talked to his attorney, he asked Officer Vens the consequences of refusing to take the test. Thereafter, Officer Vens explained to appellant that if he refused to take the test, he would be placed under an administrative license suspension. Nonetheless, appellant agreed to submit to the Breathalyzer test, which revealed a blood alcohol content of .212 percent.
On cross-examination, Officer Vens explained that although appellant was eventually stopped outside of the Cortland City limits, he initiated the traffic stop because he observed appellant "[drive] up the center of the road taking up both lanes" in the city of Cortland. Officer Vens also averred that he witnessed appellant driving erratically prior to appellant entering Cortland City limits.
At the conclusion of appellee's case-in-chief, appellant took the stand in his own behalf at the suppression hearing. He indicated that on February 11, 1998, while he was traveling on Bradley-Brownlee Road, he saw no traffic or cars behind him. On cross-examination, appellant admitted that he had been drinking. He remembered being at the bar for a couple of hours, but did not recall how much he drank. Further, when the prosecutor asked appellant if he ever went left of center, his reply was "yes." He stated that that he traveled left of center for "[e]nough distance to cross into the southbound lane."
Following appellant's testimony, Floyd Phillips ("Phillips") testified that on February 11, 1998, after he and appellant left the tavern, appellant gave him a ride home. Phillips stated that appellant crossed over the centerline two times, once when he entered on the highway and once when he exited onto Bradley-Brownlee Road. However, he explained that at no time did he observe appellant travel left of center on Bradley-Brownlee Road, nor did he see any traffic on the road. Phillips also revealed that on the night in question, both he and appellant were under the influence of alcohol.
In a judgment entry dated September 8, 1998, the trial court overruled appellant's motion to suppress the evidence. The trial court found appellant guilty of driving under the influence, driving under suspension, and traveling outside the lanes of travel. A sentencing hearing took place on October 26, 1998.
The trial court sentenced appellant as follows: (1) for driving under the influence, in violation of R.C. 4511.19(A)(1), appellant was sentenced to sixty days in jail with fifty days of the sentence suspended, was fined $1,000 with $500 of the fine suspended, had his operator's license suspended for a period of one year, but received occupational driving privileges, and was placed on probation for two years; (2) for driving under suspension, in violation of R.C. 4507.02(B)(1), appellant was sentenced to one hundred eighty days in jail with one hundred seventy days of the sentence suspended, was fined $1,000 with $500 of the fine suspended, had his driver's license suspended for one year with no occupational driving privileges, and was placed on probation for two years; and (3) for traveling outside the lanes of travel, in violation of R.C. 4511.25, appellant was fined $25. The sentences were to be served concurrently. Appellant timely filed the instant appeal and now asserts the following as error:
 "The trial court erred as a matter of law in denying [appellant's] motion to suppress since there is insufficient evidence from the extraterritorial traffic stop to support a finding that the officer had a reasonable and articulable suspicion that [appellant] was violating any traffic laws."
 Appellant's sole assertion is that the trial court erred by overruling his motion to suppress because the officer lacked probable cause or a reasonable and articulable suspicion to stop appellant and because the stop was contrary to R.C. 2935.03.[2]
In evaluating the propriety of an investigative stop, a reviewing court must consider the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86,87-88; see, also, State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
Initially, we must determine whether Officer Vens had the requisite reasonable and articulable suspicion or a probable cause to stop appellant's vehicle. It is well-settled that the test for probable cause is:
 ". . . [W]hether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91.
 It is well-established that an officer's observation of any traffic law violation constitutes sufficient grounds to stop the vehicle observed violating such law. Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 11-12. Further, in State v. Yemma
(Aug. 9, 1996), Portage App. No 95-P-0156, unreported, at 5-6, we stated:
 ". . . This court has repeatedly held that a minor violation of a traffic regulation . . . that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation. . . .
 "Once the officer has stopped the vehicle for some minor traffic offense . . . the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts. . . ."
 In the case at bar, Officer Vens testified at the suppression hearing that he personally observed appellant's vehicle drive outside the lanes of travel, which rises above the crest of an articulable suspicion to stop. Hence, based on his observations, he had sufficient probable cause to perform the traffic stop.
However, the detainment occurred outside of Officer Vens' jurisdiction. R.C. 2935.03(E)(3) clearly provides a police officer with the authority to arrest a person in an adjacent jurisdiction for a violation of R.C. Chapter 4511, which occurs in the police officer's jurisdiction. Specifically, R.C. 2935.03
provides:
 "(E) In addition to the authority granted under division (A) or (B) of this section:
". . .
 "(3) A police officer . . . may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section on the portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation in which the police officer or village marshal is appointed, elected, or employed."
In Cincinnati v. Alexander (1978), 54 Ohio St.2d 248, syllabus, the Supreme Court of Ohio has held:
 "The authority granted in R.C. 2935.03 to a police officer to `arrest and detain a person found violating a law of this state' does not confer authority upon a municipal police officer to arrest without a warrant outside the geographical boundaries of his municipality for traffic offenses observed by the officer to have been committed outside such municipal limits."
 The Supreme Court of Ohio observed that the legislative history of R.C. 2935.03 indicates that the General Assembly did not intend to provide municipal police officers with statewide arrest powers. Id. at 251.
However, in order to execute a proper arrest pursuant to R.C.2935.03, a police officer who leaves his jurisdiction must observe the occurrence of an appropriately designated misdemeanor violation within his jurisdiction and must initiate the pursuit within his jurisdiction. State v. Coppock (1995), 103 Ohio App.3d 405,411.
In the case at bar, Officer Vens initially observed appellant violate traffic laws before appellant entered the city of Cortland. He also witnessed appellant commit a traffic infraction, traveling outside the lanes of travel, while appellant was in Cortland, but he did not initiate the traffic stop until appellant traveled into the adjacent Johnson Township. Thus, even though appellant was actually detained outside of the city limits, the initial pursuit began in Cortland. Additionally, pursuant to R.C. 2935.03(E)(3), since appellant was detained in was a township adjacent to Cortland, Officer Vens was justified in stopping appellant.
Additionally, in State v. Grubb (1993), 82 Ohio App.3d 187, two Ohio State University police officers observed the defendant make a purported illegal left turn outside of the jurisdiction of the university police officers. Nevertheless, the officers exceeded their jurisdictional bounds by stopping the defendant and subsequently arresting him beyond the limits of university property for violating R.C. 4511.19. The trial court suppressed the evidence flowing from the illegal traffic stop and stated:
 ". . . R.C. 2935.03 confers upon a university police officer only power to arrest upon university property a person `found violating' a state law or municipal ordinance and off university property only if the offense occurred upon university property and the officer immediately initiated pursuit on university property and necessarily continued off university property to effect the arrest. Here, the officer admittedly was not on university property either when he observed defendant's conduct or when he initiated the `pursuit.' . . . Accordingly, the stop for the alleged improper left turn was unlawful, and the subsequent `search' violated defendant's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures. The exclusionary rule is applicable in the instant case. . . ." Id. at 192.
 We note that this case can be distinguished from Grubb
because here, Officer Vens' testimony revealed that he actually saw appellant travel outside the lanes of travel within the city of Cortland. Further, the pursuit was initiated without delay in Cortland. Hence, Officer Vens had probable cause to stop appellant on a portion of Bradley-Brownlee Road located immediately adjacent to the boundaries of Cortland City.
We must next examine whether Officer Vens had the right to ask appellant to exit his vehicle. Several courts have held that it is proper to request that a motorist exit his car when stopped for a traffic offense in the interests of the officer's safety. Statev. Evans (1993), 67 Ohio St.3d 405, 407; Pennsylvania v. Mimms
(1977), 434 U.S. 106, 111. In Mimms, the United States Supreme Court stated that it was proper for an officer to order a driver to exit a lawfully stopped vehicle, even if there was no reasonable suspicion of criminal activity. 434 U.S. at 111. The court also held that this de minimis intrusion was outweighed by the officer's legitimate safety concerns. Id.
Therefore, an officer may request that an individual submit to field sobriety tests after an initial stop, if the officer has reasonable suspicion of criminal activity, and if based upon the totality of the circumstances, the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."Terry v. Ohio (1968), 392 U.S. 1, 21.
In the case sub judice, appellant was initially stopped for traveling outside the lanes of travel. Further, Officer Vens detected an odor of alcohol on appellant, noticed his eyes were glassy, and his speech was slurred. Appellant performed three field sobriety tests, in which he failed two and passed one. Accordingly, since Officer Vens needed only reasonable suspicion, not probable cause, before conducting field sobriety tests, appellant's continued detention was justified and non-violative of any of his constitutional rights.
The final issue to be addressed is whether Officer Vens had probable cause to arrest appellant for driving under the influence of alcohol. This court has consistently held that a police officer who stops a driver for a traffic violation, may arrest that driver for driving under the influence after considering the totality of the circumstances, indicia such as the time of night, smell of alcohol, erratic driving and unsatisfactory completion of the field sobriety tests exist. State v. Shacklock (Apr. 30, 1999), Trumbull App. Nos. 98-T-0005 and 98-T-0083, unreported, at 6; State v. Evans (Mar. 27, 1998), Geauga App. No. 97-G-2069, unreported, at 10, fn. 2.
In the instant matter, because Officer Vens saw appellant commit a traffic infraction, he had probable cause to perform the traffic stop. Moreover, given the time of night, the odor of alcohol on appellant, and Officer Vens' observation of appellant's traveling outside the lanes of travel, he had reason to suspect that appellant was operating a motor vehicle while under the influence of alcohol. Further, appellant's inability to perform two of the three field sobriety tests and his admission that he had been drinking constituted specific and articulable facts providing probable cause for Officer Vens to effectuate his subsequent arrest for driving while under the influence of alcohol. Consequently, the roadside detention of appellant and his ensuing arrest for driving while under the influence of alcohol were both constitutional. Under the totality of the circumstances, we conclude that the trial court did not err by overruling appellant's motion to suppress. The trial court's decision was supported by competent, credible evidence in the form of Officer Vens' testimony at the suppression hearing.
Based on the foregoing analysis, appellant's assignment of error is not well-taken. Accordingly, the judgment of the Trumbull County Central District Court is affirmed.
NADER, J., O'NEILL, J., concur.
[1] The trial court conducted the suppression hearing and a bench trial on the merits in the same hearing on June 17, 1998.
[2] We note that in both appellant's and appellee's brief, they mistakenly cite to R.C. 2953.03.