OPINION
Through the months of January and February 2000, Detective Auricchio with the City of Dayton Police Department conducted surveillance of 1011 Ferguson Avenue, a suspected drug house. As a part of this surveillance, a confidential informant made three controlled buys of illegal drugs from the residence. The informant reported that the house was heavily fortified, with most windows and two of the three doors boarded up. Access to the house could only be made through the front door. One of the side doors had a small opening through which drug transactions could occur. Further, the house was a wreck, with no electricity or water, no food or clothing and sparse furnishings. It appeared that no one actually lived in this house, but instead it was used strictly for drug trafficking. Each time the informant conducted a buy, there were different people in the residence. On two of the buys, the informant saw guns.
As a result of the controlled buys and the surveillance, Detective Auricchio obtained a search warrant which was executed on February 25, 2000. The search warrant provided for a search of the residence at 1011 Ferguson Avenue for drugs and any drug-related items, as well as the search of seven individuals, mostly listed by nickname and description. Number eight on the list of individuals to be searched stated: "[a]ny and all people encountered in the residence."
While the detective awaited the SWAT team to execute the warrant, he witnessed fifteen people approach the residence and leave moments later. When the SWAT team entered the house, there were two men in the front room who began running up the stairs. One of the men purportedly threw a baggie into an open heating vent in the floor. None of the officers could verify which man that was. The two men, Defendant-Appellant Jeff Hill and Shawn Freeman, were apprehended upstairs. Hill was patted down, but nothing was recovered on his person at that time.
During the search of the residence, the officers recovered a handgun, gel caps, tools to stuff gel caps, and the baggie that had been thrown down the heating vent which contained approximately four grams of heroin. Both of the individuals in the house were arrested for possession of this illegal drug. Neither suspect was questioned at the scene because they were uncooperative with the police. However, on the way to the police station, Hill told the officer driving that neither the drugs nor the handgun was his. The other individual, Freeman, stated that the gun was not his, but his fingerprints would probably be found on it. As a result, only Freeman was charged with possession of a weapon while under disability.
While at the police station, an officer noticed Hill fidgeting in his seat. The officer approached Hill and found a crushed gel cap filled with heroin in his hand. Subsequently, $125 in cash was also found on Hill.
Hill was indicted for possession of heroin, resulting from both the baggie found during the search of the Ferguson Avenue residence, and the gel cap found on his person at the police station. Hill filed a motion to suppress claiming that his arrest was not based on probable cause, and was therefore illegal. The trial court overruled the motion, and Hill ultimately plead no contest to his charge. He was sentenced to community control sanctions. Hill has now appealed raising the following assignment of error:
 The trial court erred when it failed to suppress any and all evidence, including physical evidence and police observations, obtained as a result of the defendant's arrest on the grounds that the police officers lacked probable cause to arrest.
After reading Hill's motion to suppress and his brief, we can only presume that he desired to suppress the baggie of heroin found at the residence and the gel cap and money found on his person at the police station. We will address each of these separately.
The police officers entered the residence at 1011 Ferguson Avenue pursuant to a valid search warrant which allowed them to search the residence and anyone in it for drugs and drug-related items. As a result, the officers legally seized the heroin found in the residence. Hill claims that the state presented no evidence that he had any connection to the drugs seized. Consequently, he argues, the officers did not have probable cause to arrest him.
Even if we assume that the officers did not have probable cause to arrest Hill, an illegal arrest would not bar a subsequent prosecution, nor represent a defense to an otherwise valid conviction. United States v. Crews (1980), 445 U.S. 463, 475, 100 S.Ct. 1244, 1251. "Even when a suspect is arrested illegally, evidence obtained without violations of the warrant or probable-cause requirements of the Fourth Amendment will not be suppressed." State v. Thierbach (1993), 92 Ohio App.3d 365, 368, citing New York v. Harris (1990), 495 U.S. 14, 17-19, 110 S.Ct. 1640,1642-44. The exclusionary rule only prohibits admission of evidence obtained as a result of police misconduct; the defendant is not himself a suppressible "fruit" of an illegal arrest. Crews, supra. In other words, an illegal arrest does not by itself prevent the state from proving defendant's guilt through evidence untainted by police misconduct. Id.
The baggie of heroin found at the residence was found and seized legally pursuant to a valid search warrant. Regardless of whether Hill was arrested that night, the heroin was legally seized. Therefore, the trial court did not err in failing to suppress it.
The gel cap of heroin found on Hill at the police station requires a different analysis. The search of Hill's person at the police station could be justified either pursuant to the search warrant or as a valid inventory search following his arrest.
As indicated previously, the search warrant allowed officers to search any individual encountered at 1011 Ferguson Avenue. This type of warrant is valid under State v. Kinney (1998), 83 Ohio St.3d 85, 90 (finding there is an overwhelming probability that anyone present in an established drug house is in possession of some contraband, and therefore a search warrant may issue to search any individual encountered in the residence). Hill was encountered in the residence, and therefore, the officers were authorized to search him pursuant to the warrant. The fact that Hill's search was delayed until he had arrived at the police station does not undermine its legality simply because he had been removed from the residence.
Furthermore, the search at the police station was a proper inventory search, or at a minimum, valid under the inevitable discovery doctrine. Hill contends that the officers did not have probable cause to arrest him, and therefore the search was illegal.
Probable cause is a fluid concept that does not have a distinct definition, but instead is determined through a totality of the circumstances test. More specifically:
 Probable cause to arrest depends "upon whether, at the moment the arrest was made * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense."
Adams v. Williams (1972), 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225. At the moment the officers arrested Hill, they had the following information: Hill was in a residence used strictly for drug trafficking, he ran from police when they entered the residence, either he or his companion threw a baggie of heroin down the heating vent during their flight which was recovered by police, and the police had a search warrant representing probable cause that there were drugs in the residence and on any individual in the residence.
As mentioned previously, the supreme court has found that mere presence in an established drug house indicates an overwhelming probability that the individual possesses some contraband. Kinney, supra. Furthermore, "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." State v. Fontenot (Aug. 3, 1993), Montgomery App. No. 13689, unreported, p. 6, citing Sibron v. New York (1968),392 U.S. 40, 66, 88 S.Ct. 1889, 1904. See, also, Illinois v. Wardlow (2000), 528 U.S. 119, 120 S.Ct. 673, 676 ("[h]eadlong flight — wherever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such"). Upon the officers' entry into the residence, Hill and Freeman ran upstairs. This flight, coupled with probable cause that any person in the residence would have contraband, and culminating with the actual presence of heroin in the house, all combine to create sufficient probable cause to arrest Hill.
Following Hill's legal arrest, the search of his person at the police station was authorized as a "routine administrative procedure incident to incarcerating an arrested person," in other words, a proper inventory search. See Illinois v. Lafayette (1983), 462 U.S. 640, 649,103 S.Ct. 2605, 2611 (finding it reasonable for police to conduct an inventory search of an arrested person prior to incarceration). Even if an argument were made that the search was not completed as an inventory search, the inevitable discovery doctrine would allow the evidence to be properly admitted at trial. State v. Perkins (1985), 18 Ohio St.3d 193, 196, citing Nix v. Williams (1984), 467 U.S. 431, 444-45, 104 S.Ct. 2501, 2509
(holding that evidence may be properly admitted at trial once it is established that the evidence would have been inevitably discovered during the course of a lawful investigation). Because Hill was legally arrested, a proper inventory search would ultimately have been completed prior to placing him in jail. The evidence would have inevitably been discovered at that time.
Based on the foregoing, we find that the trial court properly denied Hill's motion to suppress all of the evidence. Judgment affirmed.
FAIN, J., and YOUNG, J., concur.