OPINION
{¶ 1} Defendant-appellant Charles McCoy appeals his conviction and sentence from the Licking County Court of Common Pleas on one count each of aggravated robbery, attempted murder and felonious assault and two counts of kidnapping. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 30, 2004, the Licking County Grand Jury indicted appellant on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, one count of attempted murder in violation of R.C. 2903.02(A)(1) and R.C. 2923.02, a felony of the first degree, one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and two counts of kidnapping in violation of R.C. 2905.01(B), felonies of the first degree. Thereafter, on August 5, 2004, appellant entered written pleas of not guilty and not guilty by reason of insanity.
 {¶ 3} As memoralized in a Judgment Entry filed on October 20, 2004, appellant was found competent to stand trial. Subsequently, a bench trial commenced on February 7, 2005. The following testimony was adduced at trial.
 {¶ 4} Teresa Miller is a manager at a Dairy Queen in Heath, Ohio. Prior to working at Dairy Queen, Miller had worked with appellant at Taco Bell. Miller testified that she had known appellant for approximately fifteen years and that the two worked together for a short time at the Dairy Queen. While the two were friends at first, Miller later came to believe that appellant was romantically interested in her. Miller, who is married, was not interested in appellant.
 {¶ 5} On July 23, 2004, Miller and Heather Bonifant, another Dairy Queen employee, were cleaning the Dairy Queen after closing. At one point, Heather took the trash outside and, when she returned, appellant walked in after her with a knife. At the time, appellant, who had a bluish duffle bag, was no longer employed by Dairy Queen. Appellant then shut the back door and ordered the two women to the back part of the store, where he had them get down on the floor. Appellant also had one of the women turn all of the lights off.
 {¶ 6} At trial, Miller testified that appellant then ordered them to crawl from the back of the store to the safe in the office. While Miller was crawling, appellant kicked her in the side and called her a "bitch" a couple of times. Transcript at 20. After Miller fell over after being kicked, appellant yelled at Miller to get up and bashed her in the back of her head. After Heather Bonifant asked appellant to stop beating Teresa Miller, appellant hit Heather in the face around her eye. Appellant then ordered the two women to open up the safe in the office and find something to put the money in. Once in the Dairy Queen office, appellant ripped the telephone cord out of the wall. During the incident, appellant "would make comments like, he tried to be my fucking friend for 15 years and I was nothing but a bitch to him. He made a comment about me being married to a fat, ugly bald bastard." Transcript at 23.
 {¶ 7} Miller also testified that, just prior to July 23, 2004, appellant had called her and told her that he needed some money and had asked Miller if there was anything that he could do at Dairy Queen for cash under the table. Miller told appellant that she was unable to help him. Miller stated that, after the money was loaded into two bags, ". . . he [appellant] had got in my face, and his eyes were all bloodshot and he smelled of alcohol, and he said — sorry. He said I called you yesterday, and I know my face was probably showing I didn't know what he was talking about, but I didn't let that on because I didn't want to make him madder. He said I called you yesterday, don't play stupid with me. And then he referred to you couldn't even help a friend out, and I was thinking that's what he was in reference to was the phone call a few days prior to that." Transcript at 24.
 {¶ 8} Appellant then told the two women that the three of them were going to go for a ride. As the three walked out of the Dairy Queen, appellant held a knife to Miller's neck and told her to act normal and not to "try anything stupid." Transcript at 25. When the three got to the parking lot, Miller yelled "run" and both Miller and Bonifant tried to get away. However, Miller was unable to get away from appellant, who stabbed her in the back and stabbed her again while she was on the ground. Appellant, while stabbing Miller, called her a "bitch." Miller was finally able to get away from appellant. The bags of money were later found in the parking lot.
 {¶ 9} When questioned about her injuries, Miller testified that she had two stab or slice wounds down the front of her left leg, two on her shoulder and one on her lower back. Miller further testified that her finger got sliced open and that she had "scars everywhere." Transcript at 34.
 {¶ 10} Heather Bonifant, who had known appellant for about four and a half years, also testified at trial. Bonifant testified that she went to take the trash out and that as she turned around after dumping the trash, appellant grabbed her by the throat, pushed her against the dumpster, stuck a knife with a light colored handle to her stomach, and told her that they were going to go inside and talk to Miller. According to Bonifant, as they were proceeding to the Dairy Queen office, appellant "kept kicking Teresa and hitting her and just cussing at her." Transcript at 81. Bonifant further testified that, at one point, appellant pointed the knife at Miller and said "You know, I should just slit your throat right here." Transcript at 82.
 {¶ 11} According to Bonifant, after the money was in the bags, appellant said "What, you think you bitches are getting out of this alive?" Transcript at 83. Bonifant further testified that appellant threatened to stab one if the other ran. Once she was able to get away from appellant, Bonifant tried to hit appellant with the bags of money and then went back into the Dairy Queen, plugged in the telephone, and called 911. At trial, Bonifant testified that appellant was wearing dark gloves during the incident and that he left a bluish or gray duffle bag inside the Dairy Queen near the back door. Once the police arrived on the scene, Bonifant gave the duffle bag to the police. The duffle bag contained a bandanna, rope and masking tape.
 {¶ 12} Newark Police Sergeants Pritt and Baum responded to the report of a stabbing at the Dairy Queen. While they were trying to locate appellant, the officers learned that appellant's mother lived in the City of Newark. After speaking with appellant's mother in Newark, the officers ultimately located the boarding house where appellant supposedly resided. While looking through the window of a car parked at such address, the officers saw a pearl handled knife in an open position on the dashboard that appeared to have blood on it and also some brown work gloves on the passenger side floor. The officers also observed a white bag on the back floor. When the officers went to the upstairs apartment where appellant resided, they knocked on the door and appellant opened the same. Appellant was later arrested.
 {¶ 13} Dr. Randy Jones, who works in the emergency department at Licking Memorial Hospital, testified that when Teresa Miller arrived at the emergency room, she had multiple stab wounds. According to Dr. Jones, Miller had a stab wound on her left upper back, one on her left shoulder, several on her left hand, and what appeared to be two stab wounds in her left shin area. In addition, appellant had a stab wound near where her ribs met her spine. After a CAT scan of appellant's belly revealed that appellant had a retroperitoneal hematoma, appellant was transferred to another hospital with a trauma designation. The following is an excerpt of Dr. Jones' trial testimony:
 {¶ 14} "Q. Did the injuries to her, in your opinion, involve any physical harm that carries a substantial risk of death?
 {¶ 15} "A. Certainly the two — the left upper back was potential mainly for penetrating the lung. Even more concerning was the one in the costovertebral angle that I described, mainly bleeding to death from the hematoma that I described.
 {¶ 16} "Q. So either one of those would qualify under that definition?
 {¶ 17} "A. Correct.
 {¶ 18} "Q. How about any physical harm that involved some temporary, substantial incapacity?
 {¶ 19} "A. Any of them certainly could fall under that category. It's difficult to know in the initial assessment whether that would, but certainly, again, the two in the back could fall under that category.
 {¶ 20} "Q. Any physical harm that involved some permanent disfigurement or that involves some temporary serious disfigurement?
 {¶ 21} "A. Almost all of them could fall under that category because they're all going to be leading to scarring and so that would — all those apply.
 {¶ 22} "Q. Finally, any physical harm that involves acute pain of such duration as to result in substantial suffering or involves some degree of prolonged or intractable pain?
 {¶ 23} "A. Certainly the first part. You can see from the records we gave repeated doses of morphine to her at her request because the pain was just quite extensive, quite severe. So certainly the first part of that is true from my standpoint and, you know, all of these can carry the possibility of prolonged pain. I don't know what happened with her, but they could certainly have a possibility." Transcript at 230-232.
 {¶ 24} After the trial court denied his Crim.R. 29(A) motion for judgment of acquittal, appellant took the stand. Appellant testified that he had a prior 1994 felony conviction and that, prior to July 23, 2004, he went to the Heath Police Department to talk with Sergeant April Martin about filing a lawsuit relating to an incident the night before. Appellant testified that he was admitted to a psychiatric facility when he was twelve (12) years old and when he was fourteen (14) years old.
 {¶ 25} When questioned about the events of July 23, 2004, appellant testified that he had been drinking alcoholic beverages all day that day starting at 2:00 or 3:00 p.m. and that he went to the Dairy Queen around 11:00 p.m. to try to borrow money from Teresa Miller. While appellant admitted having a knife with him, he denied taking it out of his back pocket and denied telling Heather Bonifant that he had a knife. Appellant also denied that he forced Heather into the Diary Queen, that he had his arm around her neck with a knife to it and that he had a duffle bag with him, although he admitted having a duffle bag in his car. When asked, appellant testified that he did not open his knife while outside with Heather Bonifant and that he never told anyone to get on the floor of the Dairy Queen or to turn the lights out.
 {¶ 26} Appellant further testified that he did not threaten either Heather Bonifant or Teresa Miller and did not force either woman to leave the Dairy Queen. Appellant also testified that he did not ask either one to get money out of the safe and that the two women "were assuming it, and me just coming from The Cedar [a bar] and drinking as much as I had been, they assumed it." Transcript at 254. According to appellant, he never grabbed a hold of any money bag, put the money bag into his car or wore gloves. Finally, appellant testified that he did not restrain the liberty of either women in any way.
 {¶ 27} At the conclusion of the evidence, the trial court, on February 8, 2005, found appellant guilty of all of the counts contained in the indictment. As memorialized in a Judgment Entry filed on the next day, the trial court sentenced appellant to an aggregate sentence of thirty (30) years in prison.
 {¶ 28} Appellant now raises the following assignments of error on appeal:
 {¶ 29} "I. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO DISMISS COUNTS 4 5 OF THE INDICTMENT TO THE EXTENT R.C. 2905.01(B)(1) IS CHARGED THEREIN.
 {¶ 30} "II. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT DUE TO APPELLANT BEING INTOXICATED.
 {¶ 31} "III. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO DISMISS COUNT 1, INDICTMENT.
 {¶ 32} "IV. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED AS A RESULT OF ERRONEOUSLY ISSUED SEARCH WARRANTS.
 {¶ 33} "V. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO FIND THAT THE ARREST OF APPELLANT WAS UNLAWFUL.
 {¶ 34} "VI. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AS TO COUNT I.
 {¶ 35} "VII. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN FAILING TO FIND THAT COUNTS 1, 2, 3, AND 4 ARE ALLIED OFFENSES OF SIMILAR IMPORT (R.C. 2941.25(A)) AND SUBJECT APPELLANT TO ONE (1) CONVICTION .
 {¶ 36} "VIII. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT.
 {¶ 37} "IX. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING APELLANT GUILTY OF ATTEMPTED MURDER AND SENTENCING HIM FOR SUCH.
 {¶ 38} "X. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING APPELLANT GUILTY OF COUNT 4 AND/OR 5.
 {¶ 39} "XI. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ITS SENTENCING OF APPELLANT."
 I {¶ 40} Appellant, in his first assignment of error, argues that the trial court erred in denying his motion to dismiss counts 4 and 5 of the indictment, both which allege kidnapping. We disagree.
 {¶ 41} Appellant, on November 12, 2004, filed a motion with the trial court arguing, in part, that such counts should be dismissed. Appellant, in his motion, argued, in relevant part, as follows:
 {¶ 42} "Counts 4 5 of the indictment charges [sic] defendant with a violation of R.C. 2905.01(B), F-1. It appears that plaintiff intends to charge defendant with R.C.2905.01(B)(1) and/or (2); however, the language "under circumstances that created a substantial risk and serious physical harm to her" seems only to apply to (B)(2) in each count of the indictment. Thus, Counts 4 5, to the extent it is intended to charge a violation of R.C. 2905.01(B)(1), should be dismissed, since an essential element is omitted from the (B)(1) charge."
 {¶ 43} The trial court, pursuant to a Judgment Entry filed on January 6, 2005, denied appellant's motion, holding that all of the essential elements of kidnapping were contained in the indictment and that, even if the indictment was ambiguous, there was no prejudice since it was clear that appellant was aware that "the element contained in the disputed phrase must be proven regardless of whether the [appellant] commits the kidnapping at issue by removing the victim or restraining the victim."
 {¶ 44} Appellant, in counts 4 and 5, was charged with kidnapping in violation of R.C. 2905.01(B). R.C. 2905.01 states, in relevant part, as follows: "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 45} "(1) Remove another from the place where the other person is found;
 {¶ 46} "(2) Restrain another of his liberty; . . ."
 {¶ 47} In the case sub judice, count 4 of the indictment contains the following language: ". . . by force, threat or deception, did knowingly remove Teresa Miller from the place where she was found, and/or knowingly restrain her of her liberty, under circumstances that created a substantial risk of serious physical harm to her, . . ." Count 5 contains the same language, but substitutes the name Heather Bonifant for Teresa Miller.
 {¶ 48} While appellant argues that the phrase "under circumstances that created a substantial risk of physical harm to her" seems only to apply to R.C. 2905.01(B)(2) in each count, we disagree. We find that the use of a comma after the word "liberty" in the indictment clearly leads to the conclusion that such language was meant to apply to both R.C. 2905.01(B)(1) and (B)(2). Moreover, as noted by the trial court, the indictment contains all of the essential elements of the offense of kidnapping.
 {¶ 49} Furthermore, appellant, in his motion, only sought dismissal of the R.C. 2905.01(B)(1) charge. However, the trial court, in its February 9, 2005, Judgment Entry, found appellant guilty of kidnapping "in violation of R.C. 2905.01(B), . . ." The trial court did not cite to a specific subsection of R.C.2905.01(B). From the testimony adduced at trial, which is set forth in detail above, the trial court could have found that appellant violated either R.C. 2905.01(B)(1) or (B)(2). As noted by appellee in its brief "[a]s it is not clear upon what basis the trial court found the appellant guilty of kidnapping the appellant cannot show prejudice."
 {¶ 50} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 51} Appellant, in his second assignment of error, challenges the trial court's denial of his Motion to Suppress. Appellant specifically argues that the trial court should have granted his Motion to Suppress statements that appellant made to the police after his arrest since appellant was intoxicated. We disagree.
 {¶ 52} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams
(1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172;State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906, 908, Guysinger, supra.
 {¶ 53} Appellant, on November 12, 2004, filed a Motion to Suppress, arguing that appellant's statements to the police after his arrest should be suppressed "due to his being intoxicated." Appellant further argued that, because of his intoxication, his written waiver of his Miranda rights was not knowing, intelligent and voluntary. Following a suppression hearing held on December 15, 2004, the trial court denied such motion.
 {¶ 54} A trial court, in determining whether a pretrial statement is involuntary, "should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Statev. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus, overruled on other grounds State v.Edwards (1978), 438 U.S. 911, 98 S.Ct. 3147. The same considerations apply to whether a defendant understood and voluntarily waived his or her Miranda rights. See State v.Green, 90 Ohio St.3d 352, 366, 2000-Ohio-182, 738 N.E.2d 1208. As was held in State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583, "the weight of the evidence and credibility of witnesses are primarily for the trier of the facts. * * * This principle is applicable to suppression hearings as well as trials."
 {¶ 55} At the suppression hearing in the case sub judice, Sergeant Baum testified that when he and Sergeant Pritt contacted appellant during the late evening hours of July 23, 2004, or the early morning hours of July 24, 2004, appellant exited his apartment wearing only a white pair of underwear. While appellant's eyes were bloodshot and "somewhat glassy" and the sergeant smelled "a little alcohol on him", Sergeant Baum testified that appellant "understood what we were saying and he was nonconfrontational with us." Suppression Transcript at 18. The sergeant further testified that appellant asked for some clothing and, when asked to do so, stepped out of his room in the boarding house and put his hands behind his back so that he could be handcuffed. Sergeant Baum testified that appellant complied with police requests and that there was nothing in appellant's demeanor or in appellant's verbal exchange with police that led him to believe that appellant "was so intoxicated that he didn't know what was going on." Suppression Transcript at 20. According to Sergeant Baum, appellant's speech was not slurred.
 {¶ 56} Moreover, at the suppression hearing, Sergeant April Martin of the Heath Police Department testified that she had contact with appellant outside of the room in his boarding house on the night in question and that appellant did not have difficulty walking down a steep flight of stairs or understanding police instructions while being patted down before being placed in a cruiser. The following is an excerpt from Sergeant Martin's testimony:
 {¶ 57} "Q. During the period of time you have to get — physically get out of the cruiser, walk into the building and walk into the security room, did he appear to have any difficulty with balance or stumbling, anything like that?
 {¶ 58} "A. No.
 {¶ 59} "Q. Did you notice any signs of alcohol consumption about him?
 {¶ 60} "A. A very minor odor of alcohol.
 {¶ 61} "Q. Okay. Did you notice anything that would indicate he did not understand what was going on?
 {¶ 62} "A. No. In fact, we had a conversation about his nickname Dallas.
 {¶ 63} "Q. Tell us about that.
 {¶ 64} "A. I asked him where he got his nickname from, and he explained to me the movie The Outsiders, and I acknowledged that I had seen it before, and he explained to me that was his favorite movie of all time.
 {¶ 65} "Q. So he was giving some type of details of a movie?
 {¶ 66} "A. Correct." Suppression Transcript at 40-41.
 {¶ 67} Detective Mark Phillips of the Heath Police Department also testified at the suppression hearing that he went over the content of the Miranda form with appellant at the police department. According to the detective, appellant, prior to executing the form, was able to correctly provide the detective with appellant's social security number, date of birth, telephone number and address and indicated that he understood his rights. According to Detective Phillips, appellant never indicated that he was too drunk to understand. When asked, the detective testified that appellant was very coherent, that appellant was not slurring his words and that nothing in his contact with appellant led him to believe that appellant was intoxicated to the degree that he could not understand any of his rights. Detective Phillips further testified that appellant had no problems with balance or recall.
 {¶ 68} Based on the foregoing, we find that the trial court did not err in denying appellant's Motion to Suppress his statements to the police. The trial court did not err in concluding that appellant's waiver of his Miranda rights was knowing, intelligent and voluntary.
 {¶ 69} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 70} Appellant, in his third assignment of error, argues that the trial court erred in denying appellant's November 12, 2004, motion to dismiss count 1 of the indictment. Appellant specifically contends that count 1 of the indictment, which charged appellant with aggravated robbery, should have been dismissed because the indictment failed to allege the culpable mental state of "knowingly." We disagree.
 {¶ 71} An indictment must give a defendant notice of all the elements of the offense with which the defendant is charged. Crim. R. 7. An indictment must allege all elements of an offense in order to charge a criminal offense. State v. Headley (1983),6 Ohio St.3d 475, 478-79, 453 N.E.2d 716, 720. An indictment may follow the language of the statute "provided the words of that statute charge an offense * * *." Crim.R. 7(B).
 {¶ 72} Appellant, in count 1 of the indictment, was charged with aggravated robbery in violation of R.C. 2911.01(A)(1). Count 1 of the indictment specifically reads as follows:
 {¶ 73} ". . . that Charles W. McCoy, on or about the 23rd day of July, 2004, in the County of Licking aforesaid or otherwise venued in Licking County, pursuant to Ohio Revised Code Section2901.12, in attempting or committing a theft offense, as definedin Section 2913.01 of the Revised Code, against Teresa Miller, or in fleeing immediately after the attempt or offense, did have a deadly weapon, as defined in Section 2923.11 of the Revised Code, on or about his person or under his control, when the said Charles W. McCoy, did either display the weapon, brandished it, indicated that he possessed it, or used said weapon, to-wit: a knife, . . ." (Emphasis added).
 {¶ 74} Appellant in his third assignment of error, argues that no specific theft offense was identified in the indictment and that "[i]f the theft offense are (sic) R.C. 2913.02, the indictment should alleged "No person, with purpose . . ., shallknowingly."
 {¶ 75} Revised Code 2913.01(K)(1) defines a theft offense as including a violation of R.C. 2913.02. In turn, R.C. 2913.02
provides as follows:
 {¶ 76} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 77} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 78} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 {¶ 79} "(3) By deception;
 {¶ 80} "(4) By threat;
 {¶ 81} (5) By intimidation." (Emphasis added).
 {¶ 82} In State v. Grimsley (1998), 131 Ohio App.3d 44,721 N.E.2d 488, the appellant argued that an indictment was defective in that it did not properly charge the offense of aggravated robbery. The court, in rejecting such an argument, held, in relevant part, as follows: "Grimsley's contention is not well taken. In State v. Drescher (June 16, 1982), Summit App. No. 10531, 1982 WL 5055, an indictment for aggravated robbery tracked the language of the statute, but the appellant argued that it did not sufficiently charge an offense. This court held that the indictment sufficiently charged the offense of aggravated robbery under Crim.R. 7(B) because it tracked the statutory language. Id. at 6. In the case at bar, as relates to aggravated robbery, count seven charges that Grimsley (1) either (a) while attempting or committing a theft offense or (b) while fleeing immediately after the commission or attempted commission of a theft offense, (2)(a)(i) had a deadly weapon on or about her person or under her control and (ii) displayed the weapon, brandished the weapon, indicated that she possessed the weapon, or used the weapon, or (b) inflicted, or attempted to inflict, serious physical harm on another. The indictment tracks the language of the statute precisely. Count seven properly charges the offense of aggravated robbery." Id at 46-47. Likewise, in the case sub judice, the indictment tracks the language in R.C. 2911.01(A)(1).
 {¶ 83} Moreover, in State v. Saunders (Dec. 1, 1993), Ross App. No. 1896, 1993 WL 524968, the court held that an aggravated robbery indictment was sufficient even though it did specifically allege the culpable mental state of "knowingly." The court, inSaunders, specifically stated as follows: "[w]here an indictment refers to a statute that specifies a mental element, the indictment gives notice that the state assumes the burden of proving that mental element. . . . R.C. 2911.01 incorporates the `knowingly' standard of culpability from the theft statute by making reference to the definition of a `theft offense' in R.C. 2913.01." Id. at 13.[1]
 {¶ 84} In the case sub judice, the indictment not only tracks the language of R.C. 2911.01(A)(1), but also refers to a statute that specified the mental element of "knowingly" by referring to a theft offense as defined in 2913.01.
 {¶ 85} Based on the foregoing, appellant's third assignment of error is overruled.
 IV {¶ 86} Appellant, in his fourth assignment of error, argues that the trial court erred in denying his Motion to Suppress because the search warrant was erroneously issued. Appellant notes that the search warrant was issued to a Heath police officer, but concerned the search of appellant's apartment and car, which were located in Newark, Ohio. Appellant contends that the warrant was, therefore, improperly issued and the searches were invalid and/or unlawful. We disagree.
 {¶ 87} For a violation of law to require the suppression of improperly seized evidence under the exclusionary rule of Mappv. Ohio (1961), 367 U.S. 643, 82 S.Ct. 1684, the violation must be of a constitutional nature. The exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law, but not violative of constitutional rights. Kettering v. Hollen (1980),64 Ohio St.2d 232, 234-235, 416 N.E.2d 598,600; State v. Weidman,94 Ohio St.3d 501, 2002-Ohio-1484, 764 N.E.2d 997.
 {¶ 88} As noted by the court in State v. Klemm (1987),41 Ohio App.3d 382, 383, 536 N.E.2d 14, "[g]enerally, a police officer does not have the statutory authority to arrest someone outside his jurisdiction, Cincinnati v. Alexander (1978),54 Ohio St.2d 248, 8 O.O.3d 224, 375 N.E.2d 1241, and in our judgment, the same jurisdictional limitation applies to the execution of search warrant." However, in Klemm, the court held that a violation of state law resulting from a city police officer's execution of a search warrant beyond the territorial limits of his jurisdiction did not require the suppression of evidence under the exclusionary rule because there was a demonstration of probable cause to support the issuance of the warrant. Id.
 {¶ 89} In the case sub judice, appellant does not argue that there was not probable cause for the issuance of the search warrant. Since there was probable cause, the exclusionary rule did not apply and the trial court did not err in denying appellant's Motion to Suppress.
 {¶ 90} Appellant's fourth assignment of error is, therefore, overruled.
 V {¶ 91} Appellant, in his fifth assignment of error, maintains that the trial court erred in denying appellant's Motion to Suppress since appellant was unlawfully arrested. Appellant specifically contends that his arrest was unlawful since, while in Newark, Ohio, he was arrested by a Heath police officer. Appellant notes that, pursuant to R.C. 2935.03(A)(1), a Heath Police Officer's "arresting authority" is Heath, Ohio, not Newark, Ohio.
 {¶ 92} However, as is stated above, the Ohio Supreme Court, in Kettering v. Hollen (1980), 64 Ohio St.2d 232,416 N.E.2d 598, held that the exclusionary rule does not require suppression of evidence gathered during a warrantless arrest simply because the arrest was made outside the officer's jurisdiction. The court, in Kettering, held that the exclusionary rule applied only to those cases involving evidence obtained in violation of the United States Constitution, not to cases involving evidence obtained by acts violative of state statutes only. Even if the police officer who arrested appellant was in violation of R.C.2935.03, the misconduct would only have been a statutory violation, not a constitutional violation. See City of Heath v.Johnson, Licking App. No. 04-CA-29, 2005-Ohio-485, in which this Court held that even if the police officer who stopped and arrested the appellant was in violation of R.C. 2935.03, "this misconduct would only have been a statutory violation, not a constitutional one . . . Therefore, evidence obtained as a result of the stop and arrest need not have been excluded." Id. at paragraph 21.
 {¶ 93} Based on the foregoing, the trial court did not err in denying appellant's Motion to Suppress.
 {¶ 94} Appellant's fifth assignment of error is, therefore, overruled.
 VI {¶ 95} Appellant, in his sixth assignment of error, challenges the trial court's denial of his motion for judgment of acquittal with respect to count 1 of the indictment, which charged appellant with aggravated robbery. Appellant specifically argues that the trial court erred in denying such motion since the State failed to prove every element of the offense charged in such count. We disagree.
 {¶ 96} In the case sub judice, appellant was charged in count 1 with aggravated robbery in violation of R.C. 2911.01(A)(1). The alleged victim was Teresa Miller. After resting his case, appellant renewed his previous motion for judgment of acquittal, arguing that "the evidence did not show that there was, in Count 1, a theft offense against Teresa Miller." Transcript at 281. After appellee argued that there was "clear evidence to support a finding that the offense was attempted or committed by the defendant toward Miss Miller and Dairy Queen in general . . .", the trial court denied appellant's motion.
 {¶ 97} R.C. 2911.01 states, in relevant part, as follows: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 98} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;". R.C. 2913.02 defines theft as follows: "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 99} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 100} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 {¶ 101} "(3) By deception;"
 {¶ 102} "(4) By threat;
 {¶ 103} "(5) By intimidation."
 {¶ 104} In turn, R.C. 2913.01(D) defines "owner" as "unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful."
 {¶ 105} As noted by appellee in its brief, "[i]n light of Mrs. Miller's role as assistant manager, Teresa Miller was clearly `in possession or in control' of the property belonging to Dairy Queen." We concur with appellee that Teresa Miller was the "owner" of the property that appellant took during the course of the aggravated robbery.
 {¶ 106} Appellant's sixth assignment of error is, therefore, overruled.
 VII {¶ 107} Appellant, in his seventh assignment of error, specifically contends that the trial court erred in failing to find that aggravated robbery and kidnapping are allied offenses of similar import and that attempted murder and felonious assault are also allied offenses of similar import.[2] The victim of all four offenses was Teresa Miller.
 {¶ 108} R.C. 2941.25 reads as follows:
 {¶ 109} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 110} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 111} This Court previously addressed the issue of allied offenses of similar import in State v. Driver (Oct. 23, 2000), Stark App. No. 1999CA00290, 2000 WL 1591086 at 7, and stated:
 {¶ 112} "Recently, the Ohio Supreme Court has clarified the test to be applied when reviewing claims involving allied offenses of similar import. Under the analysis of State v.Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, a reviewing court is to compare the elements of the offenses in the abstract. If the elements correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-639,710 N.E.2d 699 (citing State v. Jones (1997), 78 Ohio St.3d 12, 14,676 N.E.2d 80). This issue is whether `the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other."' If the elements do not so correspond, the crimes are not allied offenses of similar import."
 {¶ 113} If the crimes do overlap so as to be allied offenses of similar import, a court must determine whether the crimes were committed separately or with separate animus. If the crimes were committed separately or with separate animus, multiple punishments may be imposed for each separate crime. State v.Jones, 78 Ohio St.3d 12, 14, 1997-Ohio-38, 676 N.E.2d 80.
 {¶ 114} While appellant claims that the trial court erred in failing to find that attempted murder and felonious assault are allied offenses of similar import, we disagree.
 {¶ 115} In State v. Myers (Jan. 14, 2002), Perry App. No. 01CA5, 2002 WL 54753, this Court held as follows:
 {¶ 116} "We find the elements of attempted murder and felonious assault do not meet the requirements of [State v.]Rance [(1999), 85 Ohio St.3d 632, 710 N.E.2d 699], supra, and so for this reason, the offenses are not allied offenses of similar import. Likewise, we find felonious assault is not a lesser included offense of attempted murder." Id. at 3. See also Statev. Morris, Guernsey App. No. 03 CA 29, 2004-Ohio-6988, 2004 WL 2955226.
 {¶ 117} Appellant further argues that the court erred in not finding that kidnapping and aggravated robbery are allied offenses of similar import. Aggravated robbery, in accordance with R.C. 2911.01(A)(1), requires proof that defendant brandished a deadly weapon in order to facilitate the theft offense whereas kidnapping, in accordance with R.C. 2905.01, requires proof that appellant restrained Teresa Miller of her liberty or removed her from the place where she was found. Each of the crimes require proof of an element not included in the other. Accordingly, aggravated robbery and kidnapping are distinguishable because the elements do not correspond to such a degree that the commission of one will result in the commission of the other. State v.Dowdell, Cuyahoga App. No. 83829, 2004-Ohio-5487. See alsoState v. Bunch, Mahoning App. No. 02CA196, 2005-Ohio-3309 andState v. Spriggs (Aug. 28, 2001), Delaware App. No. 00CA-A-037, 2001 WL 1000980, in which this court noted that the appellant had conceded that the crimes of kidnapping and aggravated robbery were not allied offenses of similar import.
 {¶ 118} Appellant's seventh assignment of error is, therefore, overruled.
 VIII {¶ 119} Appellant, in his eighth assignment of error, argues that the trial court erred in convicting him of felonious assault. Appellant specifically maintains that not only did he not act knowingly, but he did not cause serious physical harm to Teresa Miller.
 {¶ 120} In essence, appellant argues his conviction for felonious assault is against the sufficiency of the evidence. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 121} Appellant challenges his conviction for felonious assault against Teresa Miller. To convict appellant of felonious assault, the trial court, as trier of fact, had to find that appellant knowingly caused serious physical harm to Teresa Miller. See. R.C. 2903.11(A)(1). Pursuant to R.C. 2901.22(B) "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." In turn, R.C. 2901.0(A)(5) states as follows "Serious physical harm to persons" means any of the following:
 {¶ 122} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 123} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 124} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 125} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 126} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 127} In the case sub judice, evidence was adduced that appellant stabbed Teresa Miller multiple times while calling her a "bitch." While appellant contends that he did not act knowingly since he was intoxicated, pursuant to R.C. 2901.21(C), "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."
 {¶ 128} Furthermore, while appellant argues that he did not cause serious physical harm to Teresa Miller, we note that, as a result of her injuries, Miller was transported from Licking Memorial Hospital to a trauma center. At the trial in this matter, Dr. Jones testified that Miller's injuries involved physical harm that carried a "substantial risk of death" and the severity of her injuries would involve some substantial temporary incapacity. Finally, Miller herself testified that she had scars `everywhere' as a result of the stabbing.
 {¶ 129} Based on the foregoing, we find that the trial court did not err in determining that appellant knowingly caused serious physical harm to Teresa Miller.
 {¶ 130} Appellant's eighth assignment of error is, therefore, overruled.
 IX {¶ 131} Appellant, in his ninth assignment of error, challenges his conviction for attempted murder, arguing that it was not supported by legally sufficient evidence. We disagree.
 {¶ 132} In the case sub judice, appellant was convicted of attempted murder, in violation of R.C. 2923.02(A) and 2903.02. R.C. 2903.02(A), murder, provides in pertinent part that "[n]o person shall purposely cause the death of another [.]" R.C.2923.02(A), attempt, states in relevant part, "[n]o person, purposely * * *, when purpose * * * is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." A person acts with "purpose" when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 133} As is set forth above in the statement of facts, appellant stabbed Teresa Miller repeatedly, including while she was on the ground, and told both Teresa Miller and Heather Bonifant that they were not going to "get out of this alive." In addition, appellant removed both women from the Dairy Queen after making such statement.
 {¶ 134} Based on the foregoing, we find that any rational trier of fact could have found appellant guilty of the attempted murder of Teresa Miller.
 {¶ 135} Appellant's ninth assignment of error is, therefore, overruled.
 X {¶ 136} In his tenth assignment of error, appellant asserts that his conviction for kidnapping is against the sufficiency of the evidence. We disagree.
 {¶ 137} As is stated above, our standard of review on the issue of sufficiency of the evidence was established in State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, in which the Court held as follows: "The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. . . ." Id. at paragraph 2 of the syllabus.
 {¶ 138} Appellant was convicted of two counts of kidnapping in violation of R.C. 2905.01(B). Such section states, in relevant part, as follows: "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 139} "(1) Remove another from the place where the other person is found;
 {¶ 140} "(2) Restrain another of his liberty; . . ."
 {¶ 141} While appellant maintains that appellant did not restrain either Teresa Miller or Heather Bonifant of their liberty and that both women could have left the Dairy Queen through unlocked doors, at the trial in this matter, testimony was adduced that appellant restrained both Teresa Miller and Heather Bonifant of their liberty. Both victims testified that they complied with appellant's demands due to concerns for their safety. Heather Bonifant testified that she willingly went back into the Dairy Queen with appellant after she encountered him at the dumpster because he held a knife to her. Teresa Miller testified that they complied with appellant's demands because of appellant's threats and because "we didn't want to do anything to make it worse." Transcript at 38. In short, there was evidence adduced at trial that the two women were not free to act.
 {¶ 142} Furthermore, appellant also argues that the State failed to prove that the two victims were not released in a safe place and unharmed and that, therefore, he should have been convicted of kidnapping as a felony of the second degree rather than as a felony of the first degree pursuant to R.C. 2905.01(C). Such section states that "[i]f the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree." However, we note that both Teresa and Heather testified that they fled from appellant once they were outside the Dairy Queen. There is no evidence that appellant released the two women. Furthermore, as is set forth in the statement of facts, Teresa Miller was harmed as a result of appellant's actions.
 {¶ 143} Appellant's tenth assignment of error is, therefore, overruled.
 XI {¶ 144} Appellant, in his eleventh and final assignment of error, alleges that the trial court erred in sentencing him. We disagree.
 {¶ 145} In the case sub judice, appellant was sentenced to seven years on counts 1, 3, 4 5 and to 9 years on count 2. The trial court ordered that the sentences on counts 1, 2, 4 5 run consecutive to other, but concurrent to count 3, for an aggregate sentence of thirty years in prison.
 {¶ 146} Appellant initially argues that, pursuant to R.C.2929.19(B)(2)(c), since the offenses in this matter all arose from a single course of conduct, his sentence could not exceed the maximum sentence for the most serious offense of which he was convicted. We disagree.
 {¶ 147} R.C. 2929.19(B) states, in relevant part, as follows: "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: . . .
 {¶ 148} "(e) If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by division (A) of section 2929.14
of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 149} Contrary to appellant's argument, such section does not state that appellant's "sentence should be no greater than the maximum permitted for the highest offense committed by appellant . . ." Rather, such section "has been interpreted to require reasons when consecutive sentences for offenses arising from a single incident meet or exceed the statutory maximum for the offense of the highest degree. See State v. Thomas.,
Cuyahoga App. No. 84728, 2005-Ohio-1840 at paragraph 57. Furthermore, R.C. 2929.14(E)(6) states: "When consecutive prison terms are imposed pursuant to division (E)(1), (2), (3), or (4) of this section, the term to be served is the aggregate of all of the terms so imposed." This Court previously has rejected any suggestion that consecutive sentences may not exceed the maximum sentence allowable for the most serious offense of which a defendant is convicted. See State v. Myers, Richland App No. 03-CA-61, 2004-Ohio-3052.
 {¶ 150} Appellant also contends that the trial court, in sentencing him to consecutive sentences, failed to comply with R.C. 2929.14(E)(4). We disagree.
 {¶ 151} R.C. 2929.14 (E) states, in relevant part, as follows; "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 152} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 153} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 154} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 155} Revised Code 2929.19(B)(2)(c) requires that a trial court state its reasons for imposing consecutive sentences.
 {¶ 156} In State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, 793 N.E.2d 473, the Supreme Court held a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing. The import of the decision in Comer, supra, is that the trial court must explain its decision to impose consecutive sentences to a defendant and base its decision on the statutorily enumerated criteria.
 {¶ 157} In the case sub judice, the trial court stated on the record in sentencing appellant to consecutive sentences:
 {¶ 158} "The Court would further order that Counts 1, 2, 4 and 5 shall be consecutive; that Count 3 shall run concurrent. The Court would order that the sentences be consecutive finding that it is necessary to protect the public; that it is necessary to punish the defendant; that this sentence is not disproportionate to the conduct of the defendant; and the Court further finds that the harm committed in this case is so great and unusual that a single term would not adequately reflect the seriousness of the conduct of the defendant, and the criminal history of the defendant is such that consecutive terms are needed to protect the public. Further, the Court would note that the evidence in this case indicates that there was serious physical harm inflicted; there was a threat, in addition, of harm; the serious physical harm was inflicted on Teresa. There was a threat of serious physical harm to Heather, and obviously in this case there is serious psychological harm to the victims involved in the case.
 {¶ 159} "The Court would further note that the evidence in this case indicates that this was obviously more than a casual encounter. The defendant parked his car in the church parking lot. The defendant had a duffel bag with items that could be considered criminal tools, and in furtherance of the crime, gloves were worn. Lights were ordered to be turned off. Two individuals were herded into the Dairy Queen, ordered to open the safe at the threat of harm. Further, the defendant kicked, slapped or hit each of the victims, ordered them out of the premises at knife point, threatening to harm either if the other tried to escape. Consecutive sentences are more than appropriate in this case.
 {¶ 160} "It had to be a night of terror inflicted for absolutely no reason and without any justification. It's also sad to note that another victim in this case, that there is another victim, but the mother of the defendant who had to sit through this and go through this trial. She's been victimized as well." Transcript at 300-302.
 {¶ 161} Based on the foregoing, we find that the trial court made the findings required by R.C. 2929.14(E) in imposing consecutive sentences and gave its reasons for imposing the same.
 {¶ 162} Appellant's eleventh assignment of error is, therefore, overruled.
 {¶ 163} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.
Edwards, J., Boggins, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] See also State v. Mabry (1982), 5 Ohio App.3d 13,449 N.E.2d 16 at fn.3 in which the court noted that R.C. 2911.01
"refers to theft offenses in R.C. 2913.01, the elements of which are provided in R.C. 2913.02" and State v. McSwan (1992),79 Ohio App.3d 600, 606, 607 N.E.2d 929, in which the court held that "R.C. 2911.01, by making reference to a `theft offense' in R.C. 2913.01, incorporates the `knowingly' standard of culpability from the theft statute."
[2] Appellant, in the statement of his seventh assignment of error, appears to argue that the offenses of aggravated robbery, attempted murder, felonious assault and kidnapping are all allied offenses of similar import and subject appellant to one
conviction. However, in his argument, appellant only argues that aggravated robbery and kidnapping are "potentially allied offenses" and that attempted murder and felonious assault are allied offenses. Our discussion, therefore, shall be limited to the arguments that appellant raises in his brief. See State v.Musgrove, Knox App. No. 03-CA-33, 2004-Ohio-3304, in which this court overruled an assignment of error on the basis that it contained no argument, citation to authority or reasons in support of the assignment.