OPINION
{¶ 1} Appellant Morris Jackson appeals from his multiple felony convictions in the Stark County Court of Common Pleas. The relevant facts leading to this appeal are as follows.
 {¶ 2} On the afternoon of August 1, 2005, Walter Murray was mowing grass at St. Peter's Cemetery located on Cleveland Avenue NW in Canton. While working, Murray noticed two men walking around the area of the cemetery. Shortly thereafter, Murray saw his Dodge Caravan minivan being driven away. Murray called 911 to report his stolen vehicle, providing law enforcement authorities with a description of the suspects and the van.
 {¶ 3} In the meantime, Canton Police Officer Greg Gilmore was working his first day on an off-duty security job for a National City Bank branch at the intersection of Cleveland Avenue NW and 34th Street. Officer Gilmore heard the stolen van report on his radio and realized the cemetery was only fifteen blocks south of the bank. While looking out a bank office window, Officer Gilmore saw a vehicle fitting the description of the stolen van pull into the bank's parking lot. Officer Gilmore also observed the driver of the van wearing a mask.
 {¶ 4} Speculating that the two occupants of the van were going to rob the bank, Officer Gilmore immediately ran out the back door to confront the men before they entered the building. When Officer Gilmore came outside, he saw two masked men running toward him. Gilmore drew his weapon and yelled "police!" several times. He also attempted to run for cover behind a parked truck. As he moved toward the truck, Gilmore fell to the ground. When he got up, the officer saw that the two men had run to the corner of the building.
 {¶ 5} Gilmore followed and repeatedly yelled at the two men to show their hands. Instead, one of the men, later identified as Daniel Ivery, pointed a gun at the officer. Gilmore responded by firing his gun at Ivery, who fell to the ground, wounded. Gilmore noticed that Ivery's gun was about ten feet away from him and was no longer a threat. Gilmore waited for back-up to arrive.
 {¶ 6} Meanwhile, Trudy Akins and her husband, passing by the bank area as they were driving south on Cleveland Avenue, heard gunshots and saw a man running across the road toward the parking lot of the Milk and Honey Restaurant. They watched the man take off his mask and soon emerge in a small green automobile. Although Mr. Akins tried to give chase in their vehicle, the man drove away too quickly.
 {¶ 7} The owner of the green car which had just left the Milk and Honey area was Sara Bineger. She recalled a man with a mask on his forehead pointed a gun at her and said "scoot over." When she hesitated, the man tried to sit on her, at which point she exited her car via the passenger door. Bineger's car was later located in Akron, thanks to the global positioning chip in her cell phone, which she had left in the vehicle.
 {¶ 8} Jim Bracken, a customer at the Milk and Honey, heard gunshots as he left the restaurant. He also saw a man run from the bank to the restaurant parking lot.
 {¶ 9} Earlier that day, Canton police had received a report of a suspicious vehicle parked near Route 62, not far from the bank's location. Police determined that this vehicle belonged to appellant. Police also spoke with some of Daniel Ivery's acquaintances and relatives in Akron, and determined that appellant was Ivery's friend. Furthermore, Trudy Akins, one of the witnesses, picked appellant out of a photo array. A warrant was thereupon issued for appellant, who was apprehended by the Akron Police Department.
 {¶ 10} Two Canton police detectives, Bruce Lawver and Mark Kandel, drove to Akron and brought appellant to Canton for questioning. Appellant was given his Miranda rights and stated he understood them, although he would not sign a written Miranda form. Appellant stated he would talk with Detective Lawver. As analyzed in more detail infra, appellant was taken to an interview room, where, among other things, according to Lawver, he repeatedly asked about working out a "deal" with the prosecutor.
 {¶ 11} Appellant was subsequently indicted on two counts of aggravated robbery and one count of attempted kidnapping, all with firearm specifications, and one count of grand theft. Jackson pled not guilty. Prior to trial, appellant filed two suppression motions, seeking, respectively, to suppress identification evidence and his statements to police. Appellant later conceded the legality of the identification evidence. As to the statements to police, the court overruled the suppression motion, finding that appellant had not unequivocally invoked his right to counsel during his interview with Lawver and Kandel.
 {¶ 12} The case then proceeded to trial. Although appellant had taken the stand during the suppression hearing, he chose not to testify at trial. After hearing the evidence, the jury found appellant guilty on all four counts, as well as the firearm specifications. On November 28, 2005, the court imposed an aggregate sentence on appellant of thirty-five and one-half years in prison.
 {¶ 13} Appellant filed a notice of appeal on December 15, 2005. He herein raises the following four Assignments of Error:
 {¶ 14} "I. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS.
 {¶ 15} "II. THE TRIAL COURT'S FINDINGS OF GUILT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 16} "III. THE TRIAL COURT ERRED IN NOT FINDING THE CHARGE OF AGGRAVATED ROBBERY TO BE AN ALLIED OFFENSE WITH THE RELATED CHARGE OF ATTEMPTED KIDNAPPING.
 {¶ 17} "IV. THE APPELLANT'S SENTENCE SHOULD BE VACATED AND HIS CASE REMANDED PURSUANT TO STATE V. FOSTER."
 I. {¶ 18} In his First Assignment of Error, appellant contends the trial court erred in denying his motion to suppress. We disagree.
 {¶ 19} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,620 N.E.2d 906; Guysinger, supra.
 {¶ 20} In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed. 694, the United States Supreme Court held that theFifth Amendment to the United States Constitution prevents the admission at trial of statements made by a defendant during custodial interrogation when the defendant has not been advised of certain rights. Appellant herein recites at least three incriminating statements he made during his interview with Kandel and Lawver. First, he asked if an officer had been shot. Second, he stated that if he "hadn't run out of gas that day," none of this would have happened. Third, he asserted he never would have shot anybody because he did not put a round in the chamber of his gun.
 {¶ 21} According to Lawver's testimony at the suppression hearing, he and Kandel did not question appellant on the ride from Akron to Canton. Upon arrival at the station, Lawver placed appellant in a holding room, during which time appellant replied that he understood his Miranda rights and would talk with Lawver, but that he would not sign any Miranda notice forms. Appellant was thereupon taken to an interview room, where Lawver again read appellant his Miranda rights. Appellant told the detective, "[M]aybe I should get an attorney." Tr., Suppression Hearing, at 9. Lawver testified that he told appellant it was appellant's decision as to whether to get an attorney and whether to talk with the detectives. Id. Appellant proceeded to tell Lawver that he had information about a homicide in Warren, Ohio, and a shooting in Akron. Lawver and appellant then essentially engaged in a circular discussion about appellant working out a deal, with Lawver responding that he would have to relay any such proposals to the prosecutor. Id. at 10-12. Toward the end of the interview, Kandel left the room , and appellant told Lawver that he wanted him to know that he wouldn't have shot anybody or shot a cop. Id. at 12, 19. After more "rehashing" discussions about a deal, Lawver told appellant that he should get an attorney, and terminated the interview. Id. at 14.[1]
 {¶ 22} Appellant's present challenge to the denial of the suppression motion is essentially two-fold: He argues that he indeed requested an attorney after being brought back to Canton (see appellant's suppression testimony, Tr. at 47-49), and that even under Detective Lawver's version of events, Lawver did not ensure that appellant understood he could stop the questioning at any time.
 {¶ 23} In light of Lawver's testimony, appellant's statement that "maybe" he should get a lawyer falls short of an "unambiguous or unequivocal" request for counsel and invocation of his right to remain silent. See State v. Murphy (2001), 91 Ohio St.3d 516, 520,747 N.E.2d 765. The court did not accept appellant's version of the non taped interview, and we will not herein substitute our judgment therefor, as the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. Cf. State v. Curren, Morrow App. No. 04 CA 8, 2005-Ohio-4315, f.n. 2, citing State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212. Because appellant's request was not unambiguous or unequivocal, we conclude the detectives had no obligation to cease their questioning at that point. See Davis v.United States (1994), 512 U.S. 454, 456-457.
 {¶ 24} Accordingly, we hold the trial court did not err in denying the motion to suppress. Appellant's First Assignment of Error is overruled.
 II. {¶ 25} In his Second Assignment of Error, appellant contends his convictions are not supported by the sufficiency of the evidence and are against the manifest weight of the evidence. We disagree.
 {¶ 26} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: " * * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt ." State v.Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 27} Appellant first generally challenges the sufficiency of the evidence of all four of his convictions by raising the issue of identification of the perpetrator. We are cognizant that only passerby Trudy Akins made a positive identification of appellant being at the scene. Although she first told the officers she "felt" appellant was the man she saw running from the scene, she testified at trial in pertinent part as follows:
 {¶ 28} "* * * When he pulled out and turned around and looked, we were right behind him. And then later on, he turned around and looked. I didn't — I couldn't obviously tell for sure that it was him at that point, but when he pulled out of Milk Honey, and turned around and looked, it was definitely him, yes. We were close enough I could see him definitely." Tr. at 205.
 {¶ 29} Appellant also urges that "[e]vidence that the appellant attempted to kidnap Sara Bineger was completely absent." Appellant's Brief at 9. The relevant statute is R.C. 2905.01(A)(2), which sets forth: "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * To facilitate the commission of any felony or flight thereafter * * *."
 {¶ 30} Bineger testified that she was leaving a photography business next to the Milk and Honey when a man with a mask pushed up on his forehead opened her car door, brandishing a gun. The man ordered her to "scoot over," even though she initially pleaded that she could not get past the gear shift and console. The man then partially sat on her lap, until she managed to crawl over into the passenger seat, hurting her leg and knee in the process, before escaping out the passenger door. See Tr. at 218, et seq. In light of such testimony, we find appellant's sufficiency challenge to the attempted kidnapping conviction without merit.
 {¶ 31} In considering an appeal concerning the manifest weight of the evidence, our standard is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 32} As previously recited, the State introduced, inter alia, the testimony of eyewitnesses Walter Murray, Officer Gilmore, Trudy Akins, Sara Bineger, and Jim Bracken. We have reviewed this evidence, along with the trial evidence of appellant's incriminating statements to Canton police and the circumstantial evidence regarding appellant's abandoned vehicle just blocks from the bank, as well as his friendship with fellow perpetrator Daniel Ivery, and we do not find the result of the trial led to a manifest miscarriage of justice. We hold appellant's convictions were not against the manifest weight of the evidence.
 {¶ 33} Appellant's Second Assignment of Error is therefore overruled.
 III. {¶ 34} In his Third Assignment of Error, appellant contends the trial court erred in failing to find the aggravated robbery charge (pertaining to Sara Bineger's automobile) to be an allied offense with the attempted kidnapping charge for purposes of merger. We disagree.
 {¶ 35} In considering whether offenses are allied offenses of similar import, the Ohio Supreme Court has stated that rather than analyzing the offenses in light of the specific facts of the case, the elements of the offenses are to be compared in the abstract. State v. Rance (1999),85 Ohio St.3d 632, 710 N.E.2d 699.
 {¶ 36} In State v. McCoy, Licking App. No. 05-CA-29, 2006-Ohio-56, we considered a nearly identical question and found aggravated robbery and kidnapping are not allied offenses of similar import.
 {¶ 37} Appellant's Third Assignment of Error is overruled pursuant to our precedent in McCoy.
 IV. {¶ 38} In his Fourth Assignment of Error, appellant raises aFoster challenge to his sentence.
 {¶ 39} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court found certain provisions of Ohio's sentencing statute unconstitutional pursuant to Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403, because said provisions required judicial factfinding to exceed the sentence allowed simply as a result of a conviction or plea. These included the provision for a more than minimum sentence under R.C. 2929.14(B). To remedy Ohio's felony sentencing statutes, the Ohio Supreme Court severed the Blakely-offending portions that either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption. Foster at ¶ 97. The Court concluded " * * * that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100.
 {¶ 40} We find appellant's sentencing is based upon at least one unconstitutional statutory provision now deemed void. Therefore, we are persuaded under these circumstances to remand this matter to the trial court for a new sentencing hearing.
 {¶ 41} Appellant's Fourth Assignment of Error is therefore sustained.
 {¶ 42} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part, and remanded for a new sentencing hearing.
By: Wise, J. Gwin, J. and Boggins, J. concur
[1] The detectives honored appellant's request that the interview not be taped. See Tr., Suppression Hearing, at 34, 52.